**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Plaintiff,
vs.
ISMAEL LOPEZ-GARCIA,
Defendant.

CASE NO. 09cr1118 WQH

**ORDER**

HAYES, Judge:

The matter before the Court is the motion to dismiss the indictment for invalid deportation filed by the Defendant Ismael Lopez-Garcia (Doc. # 30).

**BACKGROUND FACTS**

On January 5, 2003, Defendant was removed from the United States pursuant to the expedited removal process in 8 U.S.C. § 1225(b)(1). The Determination of Inadmissibility found Defendant was "inadmissible to the United States under sections 212(a)...(6)(C)(i) [and] (7)(A)(i)(I) ... in that: On or about January 4, 2003, you applied for admission into the United States. You presented a Mexican Passport with a counterfeit Non-Immigrant Visa. You are a citizen and national of Mexico. You have no legal right to enter, pass through, or remain in the United States. You willfully misrepresented your true identity and are not in possession of a valid entry document as is required by the Act." (Doc. # 31, Exhibit A). In connection with the expedited removal, Defendant provided a Sworn Statement on January 5, 2003 stating that he applied for admission to enter into the United States with documents that he purchased in Mexico for $100.00 in order to go to a party; that he was a citizen of Mexico with no legal

documents to enter or remain in the United States; that he understood he was being deported for a period of five years; and that he had no fear or concern about being returned to his home country. The Sworn Statement signed by the Defendant indicated on page one that the proceedings were "In the Spanish language" and stated on page three prior to Defendant's signature: "I have read (or have had read to me) this statement...." (Doc. # 31-2 at 3). On page three of the Sworn Statement, the translator signed the Certificate of Translation and checked a box which indicated that "[t]his written sworn statement ... was not read to the alien in the Spanish language, which is his/her native language or a language which he/she understands." *Id.*

Defendant's 2003 expedited removal was reinstated on December 12, 2007 and on November 12, 2008.

On March 25, 2009, the grand jury returned an indictment charging the Defendant with being a deported alien found in the United States in violation of Title 8, United States Code, Section 1326 (a) and (b).

**CONTENTIONS OF PARTIES**

Defendant moves to dismiss the indictment on the grounds that his 2003 expedited removal cannot be used as an element of a constitutional prosecution under Section 1326. Defendant asserts that 8 U.S.C. § 1225(b)(1)(D), which prohibits any claim attacking the validity of a Section 1225 removal order in a prosecution under Section 1326, directly conflicts with his rights under the due process clause of the Fifth Amendment of the United States Constitution to collaterally attack his removal order. Defendant asserts that Congress has exercised its authority in Section 1225(b)(1)(D) to strip the federal court of jurisdiction to hear any claim attacking the validity of an expedited removal, and that the constitutional requirement of due process prohibits the use of an expedited removal under Section 1225 as an element of the offense in a subsequent prosecution under Section 1326.

The Government contends that the Court lacks jurisdiction to review any challenge to the validity of the 2003 expedited removal order pursuant to Section 1225(b)(1)(D). The Government asserts that the Defendant's due process argument has no application in this case

because arriving aliens subject to expedited removal have no due process rights at the time of their removal and, subsequently, will never be permitted to collaterally attack their removal. In the alternative, the Government contends that any judicial review is limited to confirming that immigration authorities complied with the procedures set out in 8 U.S.C. § 1225. The Government asserts that Defendant's expedited removal was not defective and that Defendant suffered no prejudice from any failure to comply with the regulations.

**APPLICABLE LAW**

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Congress provided: "In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)." 8 U.S.C. § 1225(b)(1)(D).

In *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), the United States Supreme Court held that a defendant charged with illegal reentry under 8 U.S.C.§ 1326 has a right under the due process clause of the Fifth Amendment to collaterally attack the validity of his prior removal order because the removal order serves as a predicate element of the charged offense. The district court and the court of appeals had concluded that the defendants' lack of understanding of their rights to appeal their deportation orders rendered their prior deportation proceedings "fundamentally unfair." *Id*. at 832. On appeal to the Supreme Court, the Government did not challenge the finding that the deportation proceeding was fundamentally unfair and asserted only that Section 1326 did not authorize a collateral attack on the underlying deportation order. The Supreme Court determined that "Congress did not intend the validity of the deportation order to be contestable in a §1326 prosecution" but concluded "[i]f the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." *Id.* at 837. The Supreme Court explained:

> Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal

> sanction, there must be *some* meaningful review of the administrative proceedings. (citations omitted). This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense. (footnote omitted). The result of those proceedings may subsequently be used to convert the misdemeanor of unlawful entry into the felony of unlawful entry after deportation. Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 837-839.

**ANALYSIS**

On January 4, 2003, the Defendant in this case arrived at the border seeking entry into the United States with fraudulent documents to go to a party. Defendant was properly deported pursuant to the expedited proceedings in Section 1225. Section 1225(b)(1)(A)(i) provides in relevant part: "[i]f an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible under section 1182(a)(6)(C)[1] or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Defendant was not entitled to judicial review of expedited deportation at the time of the deportation. The due process clause "requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Mendoza-Lopez*, 481 U.S. at 839. "[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837. This Court concludes that 8 U.S.C. § 1225(b)(1)(D) does not preclude the application of the constitutional protections in *Mendoza-Lopez*. *See United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) ("We hold that section 1225(b)(1)(D) does not preclude the district court or this

---

[1] 8 U.S.C. § 1182(a)(6)(C)(i) provides "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefits provided under this chapter is inadmissible."

court from determining that the requisites of a *Mendoza-Lopez* claim as asserted by Lopez-Vasquez are *not* met.") *see also United States v. Martinez-Zavala*, No. 09cr1774, 2009 WL 2485751 at *7 (S.D. Cal. Aug. 11, 2009) (motion for reconsideration pending) ("[E]ven if the Court were to find that the expedited removal proceeding here violated Martinez-Zavala's procedural process rights, he has not adequately demonstrated prejudice as a result of the alleged violation. Therefore, the Court does not reach the question of whether it properly has jurisdiction to consider the defendant's Section 1326(d) attack on his removal order in spite of Section 1225(b)(1)(D)."). Under *Mendoza-Lopez*, the Government is not entitled to use a prior deportation which is "fundamentally unfair" and not subject to some meaningful judicial review. *Mendoza-Lopez*, 481 U.S. 832. An underlying removal order is fundamentally unfair if: 1) an alien's due process rights were violated by defects in the underlying proceedings, and 2) he suffered prejudice as a result of the defects. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

Judicial review of due process in this case is limited to whether immigration authorities complied with the procedures set out in 8 U.S.C. § 1225. *See Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *see also Pazcoguin v. Radcliffe*, 292 F.3d 1209,1218 (9th Cir. 2002) (same). Defendant contends that the immigration officials failed to read all the information on the Sworn Statement to him and failed to give him the assistance of a Spanish language interpreter. The initial page of the Sworn Statement indicated that the proceedings were in the Spanish language. However, the translator signed at the end of the statement and checked the box that the sworn statement was not read to the Defendant in his native language. Assuming that this ambiguity constitutes a violation of Defendant's procedural due process rights, the Court concludes that the Defendant has not demonstrated any prejudice as a result of the asserted violation.

In order to show prejudice, Defendant need not show that he actually would have been granted relief; rather he must show that he had a "plausible" basis for seeking relief from deportation. *United States v. Pallares-Galan*, 359 F.3d 1088, 1103-1104 (9th Cir. 2004).

Defendant contends that he was prejudiced by the asserted defect in the deportation proceedings because he may have withdrawn his application for admission under 8 U.S.C. § 1225(a)(4). Section 1225(a) (4) provides: "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." In order to demonstrate prejudice, the Defendant must show that it was reasonably plausible that factors directly relevant to admissibility indicated that allowing him to withdraw his application would be in the interest of justice. In *Matter of Gutierrez*, 19 I & N. Dec. 562, 564-565 (BIA 1988), the Board of Immigration Appeals concluded that an Immigration Judge should not permit an alien to withdraw his application for admission unless the alien, "in addition to demonstrating that he possesses both the intent and means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice (i.e., that justice would be ill served if an order of exclusion was entered)." *see* 8 C.F.R. § 1240.1(d) (codifying the standard in *Matter of Gutierrez*). Defendant in this case has suggested no facts or circumstances relating to the issue of admissibility that would show that granting withdrawal would have been in the interest of justice at the time of his 2003 expedited removal. The Court concludes that the Defendant has not demonstrated prejudice as a result of an alleged defect in the 2003 expedited deportation proceedings. The underlying deportation proceedings were not fundamentally unfair and the Government may rely on the 2003 deportation order as an element of the criminal offense.

IT IS HEREBY ORDERED that the motion to dismiss the indictment for invalid deportation filed by the Defendant Ismael Lopez-Garcia (Doc. # 30) is denied.

DATED: October 6, 2009

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge